2-14-0546. The people of the state of Illinois are going to have to leave the entire law firm and Mr. Perkins. Are you going to want to have Mr. Perkins, Mr. Davis, or Kirk? Are you going to want to have Mr. Napoli, Mr. Barry, or Mr. Davis? Good morning again, Mr. Kirk. You've been busy. If I start talking about Boyd, you're kind of going to be steering me back into the right case. May it please the court and counsel, the trial court abuses the discretion in this case of Tyler Lawson's bench trial. When admitted to jail, I have a telephone recording of Lawson speaking with a girlfriend about their relationship and the long-term facts of their relationship. As the two discussed their situation, the defendant, Mr. Lawson, said, I'm looking at some time, I might be gone. He had another statement that said, I put myself in this situation. These are not admissions. And he was only in jail on this one offense, correct? All offenses related to this one incident, that's correct, Your Honor. But they're not admissions to those offenses. They're merely acknowledgments of his circumstances and the complications that his incarceration brings to the relationship that he was discussing. Well, can't jail be inferred in People v. Aguilar, it tells us? Well, they're not admissions, though, because they're too ambiguous to constitute an inference of guilt where there's nothing acknowledging the facts of the crime. They're remissible to establish his guilt. Does it have to acknowledge the facts? I contend that it does, yes. Is there an authority for that, Mr. Tyler? I cited my brief, People v. Whitlock, People v. Hofstadter, that talks about those are the standards. They rejected the admissibility of the statement should not have been admitted in Hofstadter relying on Whitfield, excuse me, Whitlock, on the basis that they were too ambiguous, too vague, absent of any indication or knowledge of the facts of the crime. You know, the mere statements of, I'm looking at some time, I might be gone, does not go at all to the charges of residential burglary, home invasion, aggravated battery in this case. You know, the omission of these statements was not harmless error in this case. You know, the complaining witness, Mr. Fisher, testified that he went to bed, the lights were off, someone kicked in his door, turned on a hall light, accosted him. He made some indications that it was the defendant, he recognized him, but ultimately, during his testimony, when asked, he said, how sure are you that it was the defendant? He said, I'm 80% sure. Did the kid call Grandpa? The kid called, the kid did call him Grandpa, according to Mr. Fisher. Mr. Fisher was 85 years old at the time. And Grandpa called him by his name. That's correct. And the kid had called, the grandson, whomever he was, had called long before and asked for money for some cigarettes, right? Correct. And then when he left the house, he grabbed some loose cigarettes. Correct. But I'm still only 80% sure that it was Tyler. But that's, aren't these issues for the trier of that? Well, they are, the trial judge in this case. You know, and I think it's telling that when the defendant made a motion for directed verdict at the close of the state's case, the trial judge indicated that they didn't rise to levels of omission or, I don't recall his exact words, but he gave them little weight. He did not consider these statements to be strong statements of culpability. But by the time we got to the... Which statements? I'm sorry? Which statements? The one to the girlfriend?  Those were the only ones that were admitted out of the jail, jailhouse. I thought you meant Grandpa's statements. No, no, I'm talking about the jailhouse statements. But by the time we get to the verdict stage, you know, the trial court is calling these directed missions and has significantly increased the weight ascribed to these statements between motion for directed verdict and actual verdict. And I think that's a product of Mr. Fisher's statements that he's only 80% sure that it was his grandson who committed these offenses. You know, when you have 80% certainty, you need some kind of evidence to get you over that beyond a reasonable doubt. And by assigning extra weight to these statements that shouldn't have been admitted in the first place, it removes any harmless error of omission of these statements. You know, they were clearly mentioned by the court and factored into the court's finding of guilt in this case. If this was a jury, the jury would have been instructed that the defendant, there's evidence that the defendant made certain statements. It's for you as the jury to decide what weight to be given to those statements and so forth. Isn't that exactly what the judge did here, though? Well, the problem where the judge abused his discretion was the state filed a pre-trial motion in limine to admit these. And that motion should have been denied because of the ambiguity and the vagueness of the statements. I think that if the judge had properly denied the state's motion to admit these statements, then we would have been in a situation where we would have needed to give jury instruction. But you're correct. Those instructions would have been given had they been, had the court allowed these statements. My argument on appeal here is the trial court erred in allowing these statements because they're not material, they're not relevant because they're too ambiguous. They don't go to the material issues necessary to prove the elements of the case here. And then when the court relies on those, what should have been inadmissible statements to support its finding of guilt, then we have reversible error in this case. And the case should be remanded for a new trial in which these jailhouse telephone recordings are not admitted. Well, isn't Hofstetter distinguishable? I mean, in this case, he said something to girlfriend. I can't remember what he said. Something like, no, no, no, that's Hofstetter. Yeah, Hofstetter said about don't worry about, don't worry about Tina. And in this case, he said, I'm looking at some time. I might be gone. I put myself in this situation. I can't be mad at you. I put myself in here. Know what I'm saying? No. I mean, again, that was the only case he was in jail on. What else could he be talking about? The context of the conversation was their relationship and the implications of this incarceration on their relationship. It was very conciliatory on the defendant's part. When you listen to it, I think it's fair to characterize it as he's being apologetic and trying to, you know, be a good boyfriend as much as he can from inside the Winnebago County Jail. You know, he never says anything about I did this or I robbed grandpa, therefore I'm going away. According to the case law, does he have to say I did this? He didn't have to come right out and say I did it. I don't have to do it. Now, Whitlock says he has to indicate some point that he knew the facts of the case. Correct. You know, Hofstetter says I'm not worried about Tina, and they found that that wasn't enough. And Whitlock, they didn't find that it was enough. But I'm looking at some time here. I might be gone. I put myself in this situation. I can't be mad at you. I put myself in here. You know what I'm saying? I mean, I don't know how that, how can that not be him talking about this case? I mean, if he had two or three other cases pending, do you feel you might have a better chance of saying? Sure, he could be talking about anything. He could be talking about any one of those cases. But, again, you know, I mean, Whitlock is clear that it needs to show knowledge of the facts of the case, and they don't here. I don't see how I put myself in here in the context of a discussion of my availability to continue a romantic relationship can be conclusively interpreted as I committed the underlying offenses. You know, the trial court in announcing his verdict characterized these as direct admissions. You're saying it's too vague. Yes. Yes. And it's too vague because there's no reference to this particular offense. Correct. Or a fact or something that would indicate he was present. Correct. When he's talking about his life circumstances with his girlfriend on the telephone, you know, I put myself in here because, you know, the course, the trajectory of my life has led me here. I put myself in here through everything I've done since I was in kindergarten. You know, it's ambiguous. It's vague. It needs to have some kind of indication that it's related to the underlying facts of the charges that he's being incarcerated on in order to constitute a direct admission as it was treated by the trial court. But aren't the defendant, doesn't Hofstadter as well as the Stewart case say that the statement when taken into, in connection with the other facts, leads to an inference that the defendant committed the offense? So the statement, if this statement in and of itself, maybe if you didn't have any facts, maybe you can argue that. But if you have this statement in conjunction with the testimony of Grandpa, wouldn't that make it, this inference or this circumstantial evidence or evidence in conjunction with the statement, wouldn't that make it admissible under Hofstadter? Well, you know, the statements of themselves are ambiguous. I mean, they're ambiguous statements. I mean, I put myself in here. That doesn't mean, I don't think that you put that into a translator black box and it comes out, I committed the underlying offenses. Well, it depends on where you're sitting. Yeah, if you were sitting in a telephone booth and you say, I put myself in here, or you're sitting in jail on a felony offense and you're talking to your girlfriend and you say, hey, I put myself in here, I'm sorry, I did it. Or I'm the one that put myself in this situation or I put myself in here. I mean, yeah, I think you're absolutely correct. I'm looking at some time. I might be gone. I put myself in this situation. I can't be mad at you. I put myself in here and know what I'm saying. That in and of itself, if we don't know the surrounding circumstances of where he is sitting, maybe. But once we know where he's seated and we have the facts, the other evidence, wouldn't a trier of that be able to make a reasonable inference that this statement was some evidence of guilt? It's too ambiguous. Too vague. Yes. Yes. Let's go on to the next issue that you raised. And that's the lesser included returns. Yes, ma'am. People v. McClaughan, Illinois Supreme Court, 1998, said that residential burglary violates the one act one crime rule because they are both predicated on a single entry into a residence. With due respect to this court, that is controlling precedent. McClaughan is still good law and must be followed by this court. We followed it before, didn't we? You have followed it before as far back as People v. Shanteloff. More recently, People v. O'Mary and Jones. Although I acknowledge that the state confessed there at that point. Now they're contested by citing People v. Price out of the 4th District. The 4th District went against the Illinois Supreme Court on this. They chose to disregard McClaughan. They didn't distinguish it. They ignored McClaughan. They said we're going to follow a different part of McClaughan. The part about intentional murder. Is that based on the same single physical act as residential burglary? McClaughan said no, it's not. That's the part that the 4th District latched onto in Price. As I pointed out in my reply brief, I think it's significant that those principles that were relied on in Price were available and applied by the Illinois Supreme Court in McClaughan. On the question of murder and home invasion. Both predicated on the same single act of starting a fire. And they said no they're not because of the entry into the home. In the home invasion charge. But then they went on in a matter of a page or two later in the same opinion and said residential burglary is a lesser, pardon me, strike that, not a lesser crime. That's predicated on the same single act of entry into the dwelling. As long as it's the same entry. There was not multiple entries. Correct. Correct. Yep. And then, I mean, there's no Crespo issue or anything like that here. In the facts of this case, we showed one entry. I'm not aware of multiple entries into the home in the facts of this case. You know, Price is out there. It's a 4th District case. They ignored McClaughan. I would submit to this court that you're bound by McClaughan. Anything further? Your Honor, we just ask that you reverse the conviction and send it back for a new trial with orders that the tape recording of the telephone call not be admitted. All right. Thank you, sir. You'll have your honor on hold. Thank you. Read by all. Mr. Jacobs. Good morning, Congress. I'm Barry Jacobs on behalf of the people of Santa Ana. Before you get going, I want to start from where we left off. Let's talk about this residential burglary being a lesser-included offense of the home invasion. Actually, I would never argue that it was a lesser-included offense. It's decided on whether or not there are multiple acts. Right. And that is the premise upon which McLaurin or Mick, I'm forgetting the name, the case cited. McLaurin. McLaurin. You're telling us that we should follow the Fourth District and disregard McLaurin. Why should we do that? The Fourth District didn't actually disregard McLaurin. The Fourth District in Price looked at the analysis conducted by the McLaurin court with regard to the attempt murder and home invasion, finding that those were based on two separate acts, not just a single act of setting a fire, but upon an entry and upon setting a fire, and found that in McLaurin, when the analysis turned to the question of whether or not residential burglary was predicated on a single act as home invasion, the Price court said that's incorrect. The court analysis of those two issues was inconsistent because home invasion predicated on someone being injured. In this case, that's how it was pled, that Mr. Fisher had suffered a battery. That is two separate acts interrelated to the entry, but based upon two separate acts. An additional element, if you call it that. Correct. In this case, as in Price and McLaurin, but mainly Price, the defendant never argued that if the court found multiple acts based upon the entry and the harm to the victim, that residential burglary was a lesser-included offense. So the Price court decided it only upon the analysis of the multiple acts. And I would urge this court to follow that analysis in this case. In the past, have we not followed McLaurin and People v. Jones? We've followed that, so. Yes, the defense cites Jones, but in that case, while this court cited McLaurin, there was no analysis given. It was more of a blanket statement that McLaurin prohibits residential burglary and home invasion convictions to stand. Okay, let's talk about the other issue, the telephone conversation between the defendant and the girlfriend. Was it vague? The state would disagree that it's vague or remote or speculative. And regarding the question that you posed to counsel, whether or not there's any authority that a fact has to be named, there certainly is the Hofstetter case, the Whitlock case, that indicates that conversations where facts about the crime could be considered admissible. But historically, admissions are any statement by the accused that can come in. There's the Aguilar case that says any statement by the accused is admissible. That's a third district case. And in this case, the statements that the defendant made to his girlfriend, considered with the other evidence, the other very strong evidence, mainly the testimony of Mr. Fisher and the two, the officer who responded, Officer Eisman, and the detective who questioned Mr. Fisher later, all that evidence points to the fact that this was not a speculative vague statement. This spoke to the identity of the defendant as the perpetrator of these offenses. Closer to that event, I think it was right after his interview, did Grandpa say, I'm 100% sure? Grandpa did say the night of August 12th, the night of the offense, he was 100% sure that the assailant was his grandson, the defendant in this case. The fact that during this conversation with his girlfriend, the defendant never confessed. He never said why he was locked up. He didn't go into the specifics. He did impliedly admit, at least, that he was responsible for the offense. He said, I put myself in here. I can't blame you or I can't hold you responsible. I put myself in this situation. I put myself in here. I'm looking at some time. Those are not direct quotes. Hofstetter is distinguishable and does follow Whitlock. In both of those cases, took the approach, Hofstetter being the very innocuous statement, I'm not worried about Tina, took the approach that the statement had to pertain to knowledge of the facts of the crime. But that's certainly not always been the case when these issues have been considered. As I said, Adler, the third district case, I think from 94, and a lot of cases, I'm sorry to holler their names, indicate that any statement made by the accused of a fact that's pertinent to the issue in conjunction with other facts to prove his guilt is admissible as an admission. That's exactly what the court did here and considered the statements. So it's an admission by a purdue. Yeah, it gave him appropriate weight in denying the motion for a directed finding. The court said, I give some weight, not substantial weight. I give main weight, that's a direct quote, main weight to Mr. Fisher's testimony. Now, that's interesting you say that because you argue in your briefs that even if it was error to admit this statement, it was harmless error. Yes, and that's what it's turning to. So there's no evidence in the record that the court relied upon the statement in a great way to convict this defendant. At the denial of the motion for directed finding, the court said, I give it some weight, but I give main weight to Mr. Fisher's testimony. And then in the close of evidence, the court again said, it supports an inference of guilt or its circumstantial evidence of guilt, and I consider it for that. But I credit Mr. Fisher's testimony, the testimony of the two officers, Officer Eisenman and Detective Cunningham, who questioned Mr. Fisher on two separate dates, Officer Eisenman on the day of defense, August 12th, and then a few days later on August 30th, Detective Cunningham questioned Grandpa. And Grandpa said he was 100% sure, based upon the defendant's voice, the way he moved, or the assailant's voice, the way he moved, that he spoke to him and addressed him as Grandpa, that he addressed the assailant as Tyler. He was 100% sure on both of those dates that the assailant was the defendant. Wasn't it not only what he said or the perpetrator said to Mr. Fisher, but the sound of his voice that he identified? He did identify the sound of his voice. Not just the words, but the voice. Correct. He understood the way that, if we go through all the facts, the gentleman, Mr. Fisher, was asleep in bed after his grandson had called a couple of times looking for money for cigarettes. Mr. Fisher discouraged him from coming to his home. And then after Mr. Fisher went to bed, heard a thud. The lights are turned on. And there's some testimony that the lights are in a place where you would almost need to know where they were to turn them on. Mr. Fisher has been attacked. And, yes, based upon the way that this assailant moves, although he wore a hoodie, Mr. Fisher can see part of his face, recognizes his voice. The assailant calls him Grandpa, give me your money. He doesn't use some other derogatory term for an elderly person, which would indicate that maybe he's just an old man or something. He calls him Grandpa, as if he recognizes him. So all these facts, and the fact that Mr. Fisher then addresses him as Tyler while he's being choked or held down, all these facts indicate that Mr. Fisher's statements to the officers, that he was 100 percent sure that the assailant was the defendant in this case, certainly would take this out of the realm of an error that was reversible. People v. Stewart discusses an admission, talks about how an admission is a statement from which guilt may be inferred, but not necessarily so. Guilt doesn't necessarily follow from that statement, but it has to be taken in connection with all the other facts. So these statements that were made are capable of multiple inferences, correct? Correct. One would be the inference that, hey, I put myself in this situation, I committed this crime. Another could be, as counsel has stated, that I put myself in this situation vis-a-vis our relationship, and I'm sorry about that. There are multiple inferences that one could draw here. Correct. Does the fact that there may be multiple inferences, is that of any significance? There's always going to be multiple inferences that can be drawn from a statement, unless it's a direct admission or direct confession of involvement. But I think that the case law speaks pretty clearly that it doesn't have to be a direct admission, as long as it is pertinent to a fact. In this case, it's the identity of the perpetrator that is pertinent to the fact that it's subject to multiple inferences. We're talking about the admissibility of it. It should not preclude it from being admitted. I think Stewart says it may not lead to an inference of guilt, ultimately, but it certainly doesn't preclude admission. So then it's actually up to the fact finder to determine which of those inferences will carry the day. In this case, based on the strength of the other evidence, mainly Mr. Fisher's testimony, and supported by the testimony of the two officers, the court found that there was sufficient, I guess you could say a nexus, between those statements and this other evidence, and admitted it, and ultimately found that the evidence was sufficient. But again, crediting- Wait, are you saying that that decision is made at the motion in limine, or during the trial? The decision is made at trial. But in the motion in limine, the court had reviewed this DVD, CD, and listened, and made a preliminary ruling, yes. This is a bench trial. It was a bench trial. Presumably the court would consider it only for appropriate way. As Your Honor indicated to opposing counsel, if this was a jury trial, the jury would have been instructed accordingly to give it appropriate weight. If there's nothing else, the state would just ask that this court affirm both the convictions and sentences of this defendant. Thank you. Mr. Kirk? We discussed that we consider the context that these statements are made in, in terms of these in jail, on these charges. But when you look at Hofstetter, they also consider the context there, where a witness overheard a telephone conversation of Mr. Hofstetter and another man, saying that we need to get rid of Tina, because she might implicate us in a triple murder. And Mr. Hofstetter says, I'm not worried about Tina. I mean, you've got context there, too, that they're talking intelligently about being implicated in a triple murder. But would the other man's statements come in? I'm sorry, I... Would the other party on the phone, that other party's statements come in? In the defendant's trial? Yeah. And Mr. Hofstetter's? How would they come in? Well, we're talking about admissions by a party, not a court. Which the party would have been the defendant, right? Well, he's not the one who said, we need to get rid of Tina, because she might implicate us. He said, don't worry about Tina. Right. I have to read Hofstetter again more closely. The more incriminating statement is, we've got to get rid of Tina, because she might implicate us. I'm saying, did that come in? I don't know. I wish I could answer that for you, but I can't. I'll look at that again. Okay. That's interesting. But the point is, I think, that I just want to point out that there is some context there, too, of the statement of, I'm not worried about Tina. You know, and that seems to be more context than what we have here of... I put myself in here. The ambiguity of that and the vagueness of that and Whitlock's directive that it has to address some of the factual elements of the underlying charges. You know, and that makes it irrelevant. You know, it's subject to a motion to exclude on relevancy grounds. And that's what we have here. It's not a question of the weight. It shouldn't have been admitted at all. So, that's the defendant's position, that these were two individuals who should not have been admitted, relied upon by the trial court, after the defendant at trial... Excuse me, the complaining witness, not the defendant, indicated at trial, after some reflection, he was only 80% sure of the identity of the perpetrator. It resulted in prejudicial error that requires the defendant be given a new trial. Thank you so much. Thank you. Thank you, gentlemen, for your arguments here today. We greatly appreciate your time and your attention to detail. We will take this case under consideration and render a decision in due course. The court is now adjourned for the day. Thank you so much.